629 A.2d 232

**Dean WALLS and Verna Ruth Walls,**

**v.**

**HAZLETON STATE GENERAL HOSPITAL and Frank Polidora, M.D.**

**Appeal of HAZLETON STATE GENERAL HOSPITAL, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 1, 1993.

Decided July 15, 1993.

Reargument Denied Aug. 30, 1993.

James J. Dodd–O, for appellant.

Howard S. Stevens, for appellees.

Before DOYLE and PALLADINO, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

In this medical malpractice action originally brought by Dean Walls and his wife against Hazleton State General Hospital (Hospital) and against Dr. Frank Polidora, the Hospital appeals judgments in favor of Mr. and Mrs. Walls in the amounts of $250,000 and $80,000 respectively. These judgments were entered following an order of the Court of Common Pleas of Luzerne County (trial court) denying the Hospital's motion for judgment notwithstanding the verdict or,[1] in the alternative, for a new trial.

Prior to the jury trial, the Hospital and Mr. Walls had *by agreement,* permitted a discontinuance of Mr. Walls' direct negligence claim against Dr. Polidora.[2] The jury awarded Mr. Walls a verdict in the amount of $480,000 against the Hospital only. The trial court reduced the husband's verdict to the

---

1. A judgment notwithstanding the verdict is "properly entered by the trial court only in a clear case where, after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds could fail to agree that the verdict was improper." *Pallante v. City of Philadelphia,* 133 Pa.Commonwealth Ct. 441, 443–44, 575 A.2d 980, 981 (1990).

   Our scope of review of an order denying a judgment notwithstanding the verdict is limited to determining whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference to be drawn from the evidence and rejecting all unfavorable testimony and inferences. *Phillips v. City of Philadelphia,* 148 Pa.Commonwealth Ct. 175, 610 A.2d 509 (1992). Further, we are bound to affirm an order denying a new trial absent an abuse of discretion or error of law. *Id.*

2. The February 25, 1991 order for discontinuance as to Dr. Polidora provides as follows:

   AND NOW, this 25th day of February, 1991, upon motion of the Plaintiff pursuant to Pa.R.C.P. 229, the above captioned action is:

   ORDERED discontinued and ended with prejudice as to the Defendant, Frank Polidora, M.D.

   Said Order is entered with the concurrence of Co–Defendant Hazleton State General Hospital.

   It is further ORDERED that the attached Praecipe for Discontinuance shall be filed of record pursuant to this Order.

   R.R. 16–17a.

$250,000 statutory limit for liability on a Commonwealth party, denied the motions for post-trial relief and entered judgment on both verdicts as molded. We reverse.

There are three issues before us for review.[3] The first is whether the theory of corporate liability of hospitals set forth by our Supreme Court in *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991) applies to a state hospital; and if so, whether there was sufficient evidence for the jury to have found that the Hospital's conduct was a substantial factor in causing Mr. Walls harm. The second issue is whether the Hospital was relieved from liability for the negligence of Dr. Polidora because he was an independent contractor and had been released by the parties prior to trial. The third issue is whether the ostensible agency theory of liability set forth in *Capan v. Divine Providence Hospital,* 287 Pa.Superior Ct. 364, 430 A.2d 647 (1980) may be applied to a State Hospital.

The evidence presented by the parties before the trial court indicated that on September 14, 1984, Mr. Walls suffered a spiral fracture of his right femur in a parachute jump, was taken to the Hospital's emergency room and came under the care of the "on-call" orthopedic surgeon, Dr. Frank Polidora. Dr. Polidora was an employee of Hazleton Medical Associates, a corporation which provided orthopedic services to the Hospital.

That same day, Dr. Polidora surgically implanted a right tibial traction pin. Subsequently, on October 1, 1984, Dr. Polidora placed Mr. Walls' right leg in a Wagner external fixation device to maintain alignment of the bones so that the fracture could heal.

Mr. and Mrs. Walls alleged that the Wagner device was not continually checked and that as a result, the device's screws and bolts were not kept at the proper tension to maintain the integrity and location of the pins, thereby allowing the fracture to separate.

The evidence also indicated that Dr. Polidora was out of town on October 11, 1984, the date of Mr. Walls' discharge.

3. We have jurisdiction pursuant to 42 Pa.C.S. § 762.

There is no dispute that neither Dr. Lease nor Dr. Lovrinic, Dr. Polidora's orthopedic partners, viewed x-rays taken of the femur on October 10 until after the October 11 discharge. The parties further agree that there were no progress notes for October 10 and 11.

Mr. Walls claimed that Dr. Polidora's failure to monitor the tension on the fixation device was negligent. At the trial, Mr. Walls' counsel also claimed that the Hospital was *directly* negligent pursuant to a corporate liability theory as announced in, *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991).

Both parties concede that there was sufficient testimony by an expert that Dr. Polidora's individual negligence caused harm to Mr. Walls, but disagree whether there was sufficient evidence in the record to permit the jury to find the Hospital directly liable under *Thompson.*

Dr. Ronald Greene, Mr. Walls' orthopedic expert, testified that Dr. Polidora was negligent. The following physicians testified as to treatments given, but were not asked to express an opinion as to any defendant's negligence: Dr. Polidora and his orthopedic partners Dr. Lovrinic and Dr. Lease; Dr. Romeo Ouano, (the radiologist who read and interpreted two series of x-rays); and Dr. William Reish, (a board-certified orthopedic surgeon who treated Mr. Walls subsequent to his hospital stay).

Since Mr. Walls primarily relied upon the corporate theory of liability, we address potential liability under *Thompson* first.

I. Direct Liability under *Thompson v. Nason Hospital* :

In *Thompson,* our Supreme Court adopted the theory of corporate negligence and stated as follows:

Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital. This theory of liability creates a nondelegable duty which the hospital owes directly

to the patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party.

*Thompson,* 527 Pa. at 338, 591 A.2d at 707 (footnote omitted).

Also, the Court set forth the four areas of a hospital's duties:

(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

*Id.* at 339–40, 591 A.2d at 707 (citations omitted).

For three reasons, the Hospital argues that the corporate negligence theory of liability is inapplicable here: (1) that the medical-professional waiver to sovereign immunity includes only the acts of Commonwealth *employees,* not those of the institution itself; (2) that there was insufficient evidence that the Hospital's conduct was a substantial factor in causing Mr. Walls harm; and (3) that Section 323 of the Restatement (Second) Torts (relating to negligent performance of or undertaking to render services) applies only to private hospitals.[4] The Hospital argues that the corporate theory of liability is inapplicable because the medical-professional waiver to sovereign immunity includes only the acts of Commonwealth *employees,* not those of the institution.[5]

**4.** Because resolution of the Hospital's first two arguments is dispositive, we need not address the third contention.

**5.** The medical-professional liability exception to sovereign immunity provides as follows:

(b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth, and the defense of sovereign immunity shall not be raised to claims for damages caused by:

.    .    .    .    .

(2) Medical-professional liability.—Acts of health care *employees of Commonwealth agency medical facilities or institutions* or by a Commonwealth party who is a doctor, nurse or related health care personnel.

42 Pa.C.S. § 8522(b)(2) (emphasis added).

However, prior to addressing the defense of sovereign immunity, we must first determine whether Mr. Walls possesses either a common law or statutory cause of action against the Hospital as a Commonwealth party. *Norbert v. Pennsylvania State Police,* 148 Pa.Commonwealth Ct. 505, 611 A.2d 1353 (1992).

Here, although Mr. Walls arguably presented sufficient non-expert evidence that the Hospital failed to satisfy perfectly one or more of the four prongs of the above duties set forth in *Thompson,* he failed to specify how any particular conduct on the part of the hospital or its personnel was a substantial factor in causing him harm.

The Hospital argues that the corporate theory of negligence is inapplicable because there was no expert opinion evidence that the Hospital's conduct was either negligent under *Thompson* or was a substantial factor in causing Mr. Walls harm. We agree.

■ In a case where it is not obvious that negligence occurred and that the doctrine of *res ipsa loquitur* should be applied, expert medical testimony is required to establish causation. *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978); *Sedlitsky v. Pareso,* 400 Pa.Superior Ct. 1, 582 A.2d 1314 (1990); *Bowser v. Lee Hospital,* 399 Pa.Superior Ct. 332, 582 A.2d 369 (1990). *Compare Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981) (*res ipsa loquitur* applied in obvious cases).

■ Here, in our judgment, it was essential to present expert testimony regarding various aspects of the Wagner fixation device and the relationship between misuse of the device, the failure to follow hospital policies and any increased risk of harm to Mr. Walls.

For example, Mr. Walls' orthopedic expert Dr. Greene testified that "the care rendered *by Dr. Polidora* was not within the standards of care by a board certified orthopedic surgeon." Dr. Greene's May 17, 1990 Deposition at 68 (emphasis added). Dr. Greene did not, however, testify as to any alleged negligence on the part of the Hospital itself or any of

its employees. Since Dr. Polidora was released from the suit, testimony implicating him is irrelevant at this stage.

In addition, Dr. Greene, who testified in great detail about the origin and use of the Wagner device, stated that "these [screws and bolts on the device] can only be loose if the doctor doesn't tighten them," and that use of the Wagner device "requires daily tightening . . . for maybe two weeks or so to make sure that it doesn't loosen, and then teaching a patient to tighten it on a daily basis." *Id.* at 55, 68–69. Significantly, even though he testified that patients are sometimes taught to tighten the device, he did not state that anyone other than a doctor was to tighten it in a hospital setting or that anyone other than a doctor was to teach a patient how to tighten it.

Also, even though Dr. Ouano, the radiologist who compared Mr. Walls' series of x-rays dated October 5 and 10, testified that he did not recall whether he advised either Dr. Polidora or one of his partners that there was "a significant medical displacement of distal fragment,"[6] neither he nor any other medical expert testified that his failure to so advise was a substantial factor in causing Mr. Walls harm.

Finally, while it is true that there was testimony as to the Hospital's rules about discharge summaries and progress notes, there was no expert testimony that the failure to follow those rules was a substantial factor in causing Mr. Walls harm. In other words, there was some testimony about how Mr. Walls' treatment could have been handled better, but not that any mishandling on the part of the Hospital or its employees was a substantial cause of harm to him.

In the absence of expert testimony establishing a connection between the Hospital's conduct and Mr. Walls' harm, the corporate negligence theory of liability simply cannot stand. *See Sedlitsky; Bowser.*

II.  Respondeat Superior:

■  Resolution of the last two issues (relating to the release of Dr. Polidora and his status as an ostensible agent) is

6.  N.T. at 243.

dependent upon the existence of a respondeat superior relationship between the Hospital and Dr. Polidora.[7] In *Mamalis v. Atlas Van Lines, Inc.,* 522 Pa. 214, 560 A.2d 1380 (1989), our Supreme Court held that, absent the agent's presence in the lawsuit, liability on the part of the principal is extinguished. Such is the case here. We will, however, explain why the termination of the respondeat superior relationship, due to the release of Dr. Polidora from the suit, renders moot the remaining issues raised.

The second issue is whether the Hospital was excused from liability for the negligence of Dr. Polidora because he was an independent contractor and had been released from the lawsuit prior to trial. The Hospital argues that, because only the acts of Commonwealth employees fall under the waiver of sovereign immunity section, and since Dr. Polidora was not a Commonwealth employee, but instead, an independent contractor, the Hospital should not have been held liable for his negligence. We agree that Dr. Polidora probably was an independent contractor. However, we find that there was sufficient evidence of record for the jury to have concluded that Dr. Polidora was an ostensible agent of the Hospital, and as such, would fall under Section 8522(b)(2), the medical-professional exception to sovereign immunity.

■ There is no dispute that, at the time of Mr. Walls' lawsuit, the Hospital was a "Commonwealth party," defined as "[a] Commonwealth agency and any employee thereof...." 42 Pa.C.S. § 8501. The Hospital, however, contends that Dr. Polidora was not a "Commonwealth employee," defined as follows:

> Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or

---

7. Mr. Walls argues that other doctors were negligent and that their behavior should be the subject of our determination of whether the trial court correctly denied the motion for a judgment notwithstanding the verdict. We disagree. There is simply insufficient expert testimony that any other physician's behavior, besides that of Dr. Polidora, substantially caused Mr. Walls harm. Thus, we limit our respondeat superior analysis to Dr. Polidora.

without the territorial boundaries of the government unit.... Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.

42 Pa.C.S. § 8501. We disagree.

By definition, an independent contractor is not a Commonwealth party.[8] With regard to Dr. Polidora, however, there was sufficient evidence from which the jury could have concluded that he was a "person who is acting or who has acted on behalf of a government unit" under Section 8501. Thus, we find the Hospital's argument that the sovereign immunity exception does not apply because Dr. Polidora was an independent contractor to be without merit. However, absent his presence in the lawsuit, liability of the principal is terminated. *Mamalis.*

■ The third issue is whether the ostensible agency theory of liability set forth in *Capan v. Divine Providence Hospital,* 287 Pa.Superior Ct. 364, 430 A.2d 647 (1980), applies to the Hospital.

The *Capan* Court acknowledged the general proposition that an employer is usually not liable for torts committed by its independent contractors. The Court went on to state, however, that a physician holding independent contractor sta-

8. In *Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931 (1990), our Supreme Court clarified what party could properly claim sovereign immunity. *Marshall* involved an injured construction worker's negligence action against the Port Authority of Allegheny County (PAT) and the engineering firm engaged to perform demolition work on PAT's railway bridge. The Supreme Court held that PAT was entitled to sovereign immunity as a "Commonwealth agency" under Section 8522(b) of the Judicial Code and that the engineering company owed no duty of care to the worker.

Further the Court held that "[p]lainly, independent contractors, ... performing work for Commonwealth agencies are not employees of the agencies, and, thus, do not constitute Commonwealth parties." *Id.* at 8, 568 A.2d at 935. In our case, however, it is unclear whether Dr. Polidora was a "Commonwealth party." Therefore, *Marshall* is not strictly on point.

tus may nonetheless be considered an agent of the hospital with respect to patients in certain situations.

There are two justifications for finding an ostensible agency relationship. The first rationale is that "[t]he changing role of the hospital in society creates a likelihood that patients will look to the institution rather than the individual physician for care." *Id.* at 368, 430 A.2d at 649. The second justification for finding such a relationship is when "the hospital 'holds out' the physician as its employee." *Id.* (footnote omitted). "Holding out" has been defined as "the hospital act[ing] or omit[ing] to act in some way which leads the patient to a reasonable belief he is being treated by the hospital or one of its employees." *Id.* at 370, 430 A.2d at 649 (quoting *Adamski v. Tacoma General Hospital,* 20 Wash.App. 98, 115, 579 P.2d 970, 979 (1978) (emphasis deleted)).

Here, there was sufficient evidence for a jury to have concluded that Dr. Polidora was an ostensible agent of the Hospital. He saw Mr. Walls in the emergency room, implanted the tibial pin and put the Wagner fixation device in place.

Despite the possible existence of an ostensible agency relationship here, however, the fact remains that Dr. Polidora was released from the lawsuit. Thus, any indicia that it would have been reasonable for Mr. Walls to conclude that Dr. Polidora was a Hospital employee is no longer relevant. Again, absent the doctor's presence in the lawsuit as agent, liability on the part of the principal, in this case, the Hospital, was extinguished. *Mamalis.*

For the above reasons, we reverse.

### ORDER

**AND NOW,** this 15th day of July, 1993, the order of the Court of Common Pleas of Luzerne County dated October 26, 1992 is hereby reversed and the said court is directed to enter a judgment in favor of Hazleton State General Hospital notwithstanding the verdict.

Jurisdiction relinquished.