## Mazzarino v. Kushner

518

C.P. of York County, no. 89-SU-00990-01 consolidated with 89-SU-02073-01.

*Allen H. Smith* and *Paul D. Bekman,* for plaintiffs.

*Kendra D. McGuire,* for defendant Duncan.

*C. Kent Price,* for defendant Kushner.

*Robert E. Kelly Jr.,* for defendants Turnamian and York Hospital.

KENNEDY, *J.,* December 30, 1996—Defendant York Hospital has moved for summary judgment in the above captioned action pursuant to Pennsylvania Rule of Civil Procedure 1035. This court has reviewed the parties' submissions and pleadings.[1] For the reasons set forth herein, we grant the defendant's motion for summary judgment, in part, and deny the defendant's motion for summary judgment, in part.

## PROCEDURAL HISTORY

The plaintiff initiated this action against the defendant physicians by writ of summons on March 27, 1989.

---

1. The submissions reviewed by the court included briefs in support and opposition of the motion, the deposition transcript of Richard Turnamian M.D. dated June 17, 1993, excerpts from the deposition transcript of Ralph E. Duncan III M.D. dated February 25, 1992, excerpts from the deposition transcript of Lois Kushner M.D. dated September 6, 1991, excerpts from the deposition transcript of Joyce E. Mazzarino dated September 26, 1991, the verification of Deborah Steiber regarding Ralph E. Duncan III M.D. dated September 20, 1996, the verification of Deborah Steiber regarding Lois Kushner M.D. dated September 20, 1996, an operative report dated May 11, 1987 and signed Richard J. Turnamian M.D., a list of proposed witnesses submitted by plaintiff's counsel on March 11, 1994, a medical report from Arnold C. Friedman M.D. dated October 7, 1991, a medical report from Steven G. Bernstein M.D. dated May 10, 1996, an amended medical report from Steven G. Bernstein dated October 12, 1996, a medical report from Peter L.H. Tynberg M.D. dated April 4, 1991, an amended medical report from Peter L.H. Tynberg M.D. dated October 12, 1996, and a medical report from Keith G. Barron M.D. dated August 24, 1988.

On May 8, 1989, the plaintiff filed two complaints: one against the defendant physicians and the other against York Hospital. Both complaints involve several medical malpractice claims arising out of a surgical procedure performed on the plaintiff at York Hospital. The plaintiff filed an amended complaint against the defendant physicians on June 5, 1989. By order of this court dated August 16, 1993, the two actions were consolidated.

Upon the plaintiff's request, a pretrial conference was held on August 30, 1996. We certified the plaintiff's action as ready for trial on September 5, 1996. Also on that date, we issued a pretrial order directing the plaintiff to serve the defendants with any amended medical reports by October 30, 1996. Defendants Dr. Turnamian and York Hospital filed separate motions for summary judgment on September 20, 1996. On October 17, 1996, the plaintiff served the defendants with the amended medical reports of Steven G. Bernstein M.D. and Peter L.H. Tynberg M.D.

## FACTS

The plaintiff first visited the gynecology clinic at York Hospital for a physical examination on March 2, 1987. Diagnosed with a suspected ovarian tumor, the plaintiff underwent a hysterectomy on May 11, 1987. The hysterectomy was performed by Richard Turnamian M.D., Joseph Carter M.D., and Kathleen Morris M.D. The plaintiff experienced surgical and postoperative complications necessitating additional medical treatment. During the recuperative period in which the plaintiff's complications arose, Dr. Kushner provided her with radiology services and Dr. Duncan provided her with urology services.

In her complaint, the plaintiff alleges, in relevant part, that York Hospital is liable to plaintiff on two theories of liability: one, a corporate theory of liability based on her premature discharge from York Hospital and, two, a theory of vicarious liability, based on the alleged negligence of each of the defendant physicians as agents, servants, or employees of the defendant. In support of these claims, the plaintiff has identified four expert witnesses expected to testify at trial and produced a medical report from each expert. The witnesses include Arnold C. Friedman M.D., Steven G. Bernstein M.D., Peter L.H. Tynberg M.D., and Kenneth G. Barron M.D.

## ANALYSIS

In its motion for summary judgment, the defendant argues that it is entitled to summary judgment on the plaintiff's corporate negligence claim and on the plaintiff's vicarious liability claims based on the alleged negligence of Drs. Kushner, Duncan, and Turnamian.

Any party may move for summary judgment, as a matter of law,

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2).

In response to a motion for summary judgment, the non-moving party may not rest upon the mere allegations or denials in the pleadings but must identify

"(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

"(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." Pa.R.C.P. 1035.3.

Even though when uncontradicted, the testimony of the moving party or his witnesses is not ordinarily sufficient to demonstrate the absence of a genuine issue of material fact, the non-moving party must raise at least the defense that the credibility of the defendant's witnesses presents a genuine issue of material fact in response to a motion for summary judgment. Pa.R.C.P. 1035.2 cmt., 1035.3 note. When deciding a motion for summary judgment, the court must construe the factual record in a light most favorable to the non-moving party, resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and enter summary judgment only in cases where the right is clear and free from doubt. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992). Summary judgment may be granted in whole or in part. Pa.R.C.P. 1035.2.

As to the plaintiff's claim of corporate negligence, the defendant contends that the plaintiff failed to support her claim with expert medical testimony and, alternatively, that even if the plaintiff's allegations of corporate negligence were supported by expert testimony

they would be insufficient to impose liability on York Hospital as a matter of law.

"Corporate negligence is a doctrine under which [a] hospital is liable if it fails to uphold the proper standard of care owed [to its] patient, which is to ensure the patient's safety and well-being while at the hospital. This theory of liability creates a nondelegable duty which the hospital owes directly to [its] patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party." *Thompson v. Nason Hospital,* 527 Pa. 330, 339, 591 A.2d 703, 707 (1991). (footnote omitted)

The nondelegable duties that a hospital owes to its patients generally fall into one of four categories: (1) use of reasonable care in the maintenance of safe and adequate facilities and equipment; (2) selection and retention of competent physicians; (3) oversight of all medical practices within its walls; or (4) the formulation, adoption and enforcement of adequate rules and policies to ensure quality patient care. *Id.*

In order to prevail, a plaintiff must demonstrate "that the hospital had actual or constructive knowledge of the defect or procedures which created the harm" and that the hospital's negligence was a substantial factor in bringing about the harm to the plaintiff's injuries. *Id.* at 341, 591 A.2d at 708. Additionally, a plaintiff must show that the hospital itself was negligent, not merely that an individual for whom the hospital is responsible committed an individual act of negligence. *Edwards v. Brandywine Hospital,* 438 Pa. Super. 673, 683, 652 A.2d 1382, 1386 (1995). The hospital's negligence must be systemic in nature. *Id.* As in a medical malpractice action, a plaintiff must establish the three essential facts through the introduction of expert testimony: that the defendant was under a standard of

care; that the defendant breached that standard; and that the defendant's breach was the proximate cause of the plaintiff's injuries. *Walls v. Hazleton State General Hospital,* 157 Pa. Commw. 170, 176, 629 A.2d 232, 235 (1993), *appeal denied,* 536 Pa. 649, 639 A.2d 35 (1994). *E.g., Maurer v. Trustees of University of Pennsylvania,* 418 Pa. Super. 510, 614 A.2d 754 (1992); *Mitzelfelt v. Kamrin,* 379 Pa. Super. 121, 549 A.2d 935 (1988), *rev'd on other grounds,* 526 Pa. 54, 584 A.2d 888 (1990); *Brophy v. Brizuela,* 358 Pa. Super. 400, 517 A.2d 1293 (1986).

In her amended complaint, the plaintiff has alleged that when she was discharged from York Hospital, she was in immediate need of corrective surgery and in no condition to be discharged, York Hospital knew of her condition at the time of discharge, and York Hospital was motivated to prematurely discharge her because her medical assistance benefits were to expire on that same day. The plaintiff's allegations involve two of the four categories of institutional duties mentioned in *Thompson:* oversight of medical practices within the hospital and the adequacy of rules and policies to ensure quality patient care. Therefore, in order to prevail, the plaintiff must show, through expert medical testimony, that the defendant had a duty to oversee medical practices within its walls or make and enforce policies and rules which were adequate to ensure quality patient care, that the defendant's breach one of these duties when it knew or should have known that negligent medical practices were being committed within its walls or that its policies and procedures were inadequate to ensure quality medical care for its patients, and that the defendant's breach was the proximate cause of her injuries.

In support of her allegations, the plaintiff offers the expert testimony of four physicians. Only one of the

plaintiff's experts, Peter L.H. Tynberg M.D., even remotely supports the plaintiff's allegations. In his amended medical report dated October 12, 1996, Dr. Tynberg states, within the requisite degree of medical certainty, that it was beneath a hospital's standard of care to permit a non-physician to sign the plaintiff's discharge summary and to permit a three day delay in the dictation of a retrograde urogram. Dr. Tynberg continues, stating that the delay in dictation caused a correlative delay in Dr. Duncan's diagnosis of the distal obstruction of the plaintiff's left ureter and that the delay in dictation was a contributing factor in the plaintiff's injuries. Neither Dr. Tynberg nor any of the plaintiff's other experts have offered any opinion regarding the plaintiff's medical condition at discharge and whether discharge was warranted under those circumstances or whether the non-physician signature on the plaintiff's discharge summary bore any causal relationship to the plaintiff's injuries. Therefore, the plaintiff has failed to adequately support the allegations in her complaint with expert medical testimony.

The plaintiff argues that, while her expert medical opinions may be deficient, the operative report and discharge summary are sufficient to make a prima facie showing of corporate negligence. Setting aside any issues regarding admissibility, the need for expert interpretation, and the level of institutional knowledge necessary to support a corporate negligence claim, we would still find the plaintiff's offer of proof insufficient to survive summary judgment because the operative report and discharge summary do not evidence a duty owed by the defendant to the plaintiff or a causal connection between her allegedly premature discharge and her injuries.

Even if the plaintiff had provided expert medical testimony sufficient to support her allegations of premature discharge and patient dumping, we would still grant summary judgment to the defendant on the plaintiff's corporate negligence claim because her allegations do not involve institutional negligence of a systemic nature. In *Edwards,* the court held that the negligence of persons for whom the hospital was responsible did not necessarily expose the hospital to liability under the theory of corporate negligence set forth in *Thompson. Edwards, supra* at 683, 652 A.2d at 1387. The hospital itself must be implicated in the negligence in order to impose liability. *Id.*

Like the allegations in the instant case, the plaintiff's allegations in *Edwards* involved two of the four categories of institutional duties mentioned in *Thompson:* oversight of medical practices within the hospital and the adequacy of rules and policies to ensure quality patient care. In *Edwards,* the court found that most of the plaintiff's allegations were insufficient to impose liability under a theory of corporate negligence where the plaintiff alleged the following acts of negligence: (1) the emergency room physician's failure to start the plaintiff on intravenous antibiotics instead of oral antibiotics; (2) the hospital laboratory's failure to inform the plaintiff's physician that a report had been issued; (3) the lack of a hospital policy directing physicians when to call in an expert; and (4) the hospital's premature discharge of the plaintiff on account of the expiration of his health benefits. *Id.* at 684-85, 652 A.2d at 1387. The court found that each of the plaintiff's claims were isolated acts of individual negligence without any bearing on the hospital's negligence because in each cir-

cumstance the plaintiff failed to demonstrate either that the hospital knew of the individual's negligence or that a reasonable hospital under similar circumstances would have intercepted and corrected the problem. *Id.* The court did find one of the plaintiff's allegations, that the hospital's policy regarding the periodic removal of intravenous catheters to prevent sepsis violated health standards, would be sufficient to impose liability under the theory of corporate negligence if the plaintiff offered evidence on remand that the hospital's policy was inadequate, that the hospital should have known better, and that following the inadequate policy caused the plaintiff harm. *Id.* at 685, 652 A.2d at 1388.

In the instant case, the plaintiff alleges that the hospital was negligent in prematurely discharging her and otherwise discharging her on account of the expiration of her medical assistance benefits. The plaintiff points to the operative report, discharge summary, and patient chart as evidence of the defendant's constructive knowledge of the plaintiff's premature discharge. The operative report, discharge summary, and patient chart may well evidence the hospital's constructive knowledge. However, the plaintiff is still required to establish that a reasonable hospital under similar circumstances would have proactively reviewed these items, looking for potential treatment errors such as a premature discharge from the hospital. To establish a duty to proactively review those items, the plaintiff could have introduced evidence regarding the hospital's discharge or discharge review procedure to demonstrate that the hospital's procedures were not in accord with those taken by reasonable hospitals under similar circumstances. In the absence of additional evidence dem-

onstrating the hospital's direct involvement, the plaintiff's allegations appear to have been individual or isolated acts of negligence like those mentioned in *Edwards*. The plaintiff has simply failed to allege or demonstrate institutional negligence of systemic proportions sufficient to survive the defendant's motion for summary judgment.

As to the plaintiff's vicarious liability claims, the defendant argues that it cannot be held vicariously liable for the negligence of the defendant physicians for the following reasons: (1) that the plaintiff has failed to produce any evidence of record to support a master-servant relationship between York Hospital and Dr. Kushner or Dr. Duncan; (2) that the plaintiff has failed to plead or produce sufficient evidence of Drs. Kushner and Duncan's ostensible agency relationship with York Hospital; and (3) that the plaintiff has failed to support the essential elements of her negligence claim against Dr. Turnamian. We shall address each argument in turn.

In order for the defendant to be vicariously liable for the negligence of Drs. Kushner and Duncan as servants or employees of the hospital, the plaintiff must be able to prove that they were the hospital's servants. Whether an individual is a servant is dependent on who has the "right of control" as to the manner of the work performed. If the employer has the right to control the manner of work as well as the result, then there is a master-servant relationship. Whereas if the employer only has the right to control the result, then there is an independent contractor relationship. *Moon Area School District v. Garzony*, 522 Pa. 178, 190, 560 A.2d 1361, 1367 (1989). In determining whether an employer has control over the manner of an employee's work, a court should consider numerous factors, including the nature of the employment agreement,

the nature of work or occupation, the level of skill required to perform, whether or not the one employed is engaged in a distinct occupation or business, who supplies the tools, how payment is made—by time or job—and whether the work is part of the regular business of the employer. See P.L.E. Labor §3. Due to the nature of the medical profession, it is the general rule that interns, residents and nurses, who are assigned their duties, paid, and subject to discharge by the hospital, are deemed servants of the hospital and private attending physicians with staff privileges are independent contractors. *Gillis v. Metropolitan Hospital,* 4 Phila. 396, 404 (1980). However, the general rule is just that; a general rule that physicians are presumed to possess a high level of skill and exercise independent medical judgment when rendering medical services even though such services are rendered while in the employ of another. The particulars of the relationship must still be examined, especially as to whether the employer permits the employee physician to engage in private practice, whether the employee receives the same pay and benefits as the employer's non-physician employees, whether the employer controls the employee's schedule, and whether the physician is subject to any type of medical supervision by the employer. *Budzichowski v. Bell Telephone Company of Pennsylvania,* 503 Pa. 160, 469 A.2d 111 (1983) (discussing whether a plant physician was entitled to coworker immunity from malpractice liability under the Pennsylvania Workmen's Compensation Act).

The defendant has submitted four pieces of evidence for consideration: excerpts from the deposition of Dr. Kushner; excerpts from the deposition of Dr. Duncan; and two affidavits from Deb Steiber, risk manager for York Hospital. Dr. Kushner testified that she was part

of an independent radiology group at the time of her alleged negligence. (Deposition of Lois Kushner M.D. dated September 6, 1991 at 5.) Dr. Duncan similarly testified as to his employment. (Deposition of Ralph E. Duncan III M.D. dated February 25, 1992 at 7.) Deb Steiber states that at no time relevant were Drs. Kushner or Duncan employees of the hospital. (Verifications of Deborah Steiber dated September 20, 1996.) Ms. Steiber also states that York Hospital did not control or direct either physician's medical activities or the manner in which their work was performed during their care and treatment of the plaintiff. *Id.*

In response to the defendant's motion, the plaintiff has not explicitly challenged the credibility of any of the defendant's witnesses. However, the plaintiff has identified evidence of record, the testimony of the defendant physicians, in an attempt to controvert the defendant's assertions. Offering additional excerpts from the deposition of Dr. Kushner, the plaintiff identified portions of the transcript in which Dr. Kushner testified that the radiology group she was a part of had its offices located in the hospital, that such offices were provided without charge by the hospital, and that her radiology group read all of the hospital's x-ray films at that time. (Kushner dep. at 5-7.) The plaintiff also identified portions of Dr. Duncan's deposition transcript in which he testified that he performed most of his inpatient services at York Hospital at that time. (Duncan dep. at 7.)

The evidence of record which the plaintiff has identified must be sufficient to raise a genuine issue of material fact. The plaintiff has not raised a genuine issue as to whether Dr. Kushner or Dr. Duncan was in a master-servant relationship with York Hospital. Spe-

cifically, the fact that the hospital provided free office space in the hospital and referred all of its x-ray interpretation needs to Dr. Kushner's group, Radiology Associates P.C., is alone insufficient to raise a question as to her employment relationship to the hospital because the evidence does not demonstrate hospital control over the manner of Dr. Kushner's work. Likewise, the fact that Dr. Duncan performs most of his inpatient services at York Hospital is not itself consequential. In order to survive summary judgment, the plaintiff would have been required to show more probative evidence in order for it to be reasonable to infer that York Hospital exerted some type of control over the physicians. Such evidence could have shown payment of salary similar to that received by other physicians clearly employed by the hospital, similarities in structure and payment of employee benefit packages, control over the physicians' work schedules, or supervision by physicians clearly employed by the hospital. As the plaintiff has failed to produce evidence of the facts essential to her cause of action, her claim cannot survive summary judgment.

Although the defendant cannot be held vicariously liable for the alleged negligence of Dr. Duncan as a servant in its employ, it can be held vicariously liable for his alleged negligence as an independent contractor under the doctrine of ostensible agency. The defendant argues that it is entitled to summary judgment because the plaintiff has failed to offer any genuine issue of material fact that York Hospital led her to believe that Drs. Kushner and Duncan were ostensible agents of the hospital and, as a matter of law, because the plaintiff failed to plead specific facts supporting this theory of liability.

Generally, an agency relationship arises in three ways: through actual authority, where the principle intention-

ally confers upon the agent the right to act on the principle's behalf; through apparent authority, where the principle manifests an intent to be bound to a third party; or through estoppel (ostensible agency), where the principle permits a third party to mistakenly believe that the agent has authority to act on the principle's behalf and the third party relies on that mistaken belief. In Pennsylvania, ostensible agency has been adopted as a means of imposing vicarious liability on a hospital for the negligent acts of independent contractor physicians providing services in the hospital. *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 430 A.2d 647 (1980) (adopting the rule as set forth in Restatement (Second) of Torts §429 (1965)). In order to impose liability on the hospital, a plaintiff must prove that she looked to the hospital for medical care and that the hospital "held out" the physician as an employee. *Id.* at 369, 430 A.2d at 349. "Held out" simply means that the hospital acted or failed to act in some way that reasonably led her to believe that the treating physician was an employee of the hospital. *Id.* at 370, 430 A.2d at 349.

In response to the defendant's motion, the plaintiff has identified evidence of record, testimony of Dr. Turnamian, Dr. Duncan, and the plaintiff herself, as raising a genuine issue of material fact as to whether York Hospital ever held out Dr. Duncan as an employee. Dr. Turnamian testified that he made the referral to Dr. Duncan. (Deposition of Richard J. Turnamian dated June 17, 1993 at 55-56.) Dr. Duncan testified that most of the inpatient work his practice performs is in York Hospital. (Duncan dep. at 7.) Joyce Mazzarino testified that she was first seen by Dr. Duncan in her room after a retrograde urogram was performed in the hospital.

(Deposition of Joyce E. Mazzarino dated September 26, 1991 at 5-7.) The plaintiff has not identified any evidence of record to establish that York Hospital ever held out Dr. Kushner as an employee.

In other factually similar cases, plaintiffs have been permitted to proceed on a claim of ostensible agency. In one such case, the court found it far from clear that the hospital did not hold out the defendant physician as an employee, even though the plaintiff had been a patient in the physician's private practice at some point in the past decade. *Thompson v. Nason Hospital,* 370 Pa. Super. 115, 535 A.2d 1177 (1988). In *Thompson,* the hospital failed to specify that the physician was an independent contractor after an emergency room employee directed the physician to aid the plaintiff as he passed through the emergency room on his rounds. In another case, the court held that there would have been sufficient evidence for the plaintiff to proceed on the theory of ostensible agency, had the defendant physician not been released, where the physician, an orthopedic surgeon in private practice, was called in to treat the plaintiff by the emergency room physicians at the hospital where the plaintiff had sought treatment. *Walls, supra.* The alleged negligence in that case occurred when the orthopedic surgeon implanted a medical device in the plaintiff, but failed to properly instruct him in its use, and then allowed the plaintiff to be discharged prior to ensuring that improper use of the device had not injured the plaintiff. *Id.*

The instant case is factually similar to the cases of *Thompson* and *Walls.* Ms. Mazzarino looked to York Hospital for treatment through the hospital's clinic. (Turnamian dep. at 6.) Thompson and Walls each looked to a hospital for treatment through an emergency room. A hospital employee summoned Dr. Duncan to Ms.

Mazzarino. (Turnamian dep. at 55-56.) The physicians in *Thompson* and *Walls* were summoned by emergency room staff. And in all three cases, there is no indication that the hospital or its employees made any effort to identify the treating physician as anything other than a hospital employee or that the plaintiffs otherwise had notice that they were not being treated by hospital employees. We find it far from clear that the defendant did not hold out Dr. Duncan as an employee. In response to the defendant's motion, the plaintiff has not asserted or otherwise attempted to impose liability on York Hospital for the alleged negligence of Dr. Kushner on the basis of ostensible agency.

We also find no merit in the defendant's argument that the plaintiff's ostensible agency claim based on the alleged negligence of Dr. Duncan should be dismissed because the plaintiff failed to plead sufficient facts to sustain her claim and otherwise failed to state that Dr. Duncan was an "ostensible agent" of the hospital. In support of its argument, the defendant cites *Alumni Association, Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan,* 369 Pa. Super. 596, 535 A.2d 1095 (1987). In *Alumni,* the plaintiff was attempting to assert vicarious liability over the national chapter of a fraternity for injuries that arose out of an underage drinking incident at a local chapter's house as an alternative to social host liability which the court had found inapplicable. In a footnote, the court held that "[w]hile it is unnecessary to plead all the various details of an alleged agency relationship, a complainant must allege, as a minimum, facts which: (1) identify the agent by name or appropriate description; and (2) set forth the agent's authority, and how the tortious acts of the agent either fall within the scope of that authority,

or, if unauthorized, were ratified by the principal" and dismissed the plaintiff's ostensible agency claim. *Id.* at 605 n.2, 535 A.2d at 1100 n.2 (citing P.L.E. Agency §174).

Initially we note that the facts in *Alumni* are distinguishable from the facts in the instant case. Here, the plaintiff has alleged that the defendant physicians were agents of the hospital and that the defendant had complete and unrestricted care and control over her while in the hospital. In *Alumni,* the plaintiff seems to have alleged that the national chapter of the fraternity was more of a sponsor. Additionally, it appears that the plaintiff in *Alumni* failed to allege that the local chapter was an agent of the national chapter. Whereas here, the plaintiff expressly alleged that the defendant physicians were agents of York Hospital.

Additionally, a closer look at *Alumni* reveals that the court must have been citing to P.L.E. Agency §122 because section 174 does not exist. Section 122 reads as follows:

"Generally, a third person who seeks to hold a principal for his agent's acts must, in his complaint, identify the agent by name or by appropriate description. An averment of agency is a fact that is admitted for the purposes of a demurrer rather than a conclusion of law.

"The plaintiff must allege the agent's authority, and that the acts relied upon were within this authority. It is sufficient, however, that the plaintiff merely allege that a person was a duly authorized agent of the defendant, without pleading the details." P.L.E. Agency §122. (footnotes omitted)

We also note that Pa.R.C.P. 1019(a) does not require that a plaintiff plead agency with specificity, but only

that a plaintiff concisely and summarily plead the material facts on which a cause of action is based. Furthermore, a plaintiff is not obliged to state the legal theory underlying his complaint. *Cassell v. Shellenberger,* 356 Pa. Super. 101, 514 A.2d 163 (1986). In sum, we find that when a plaintiff alleges an agency relationship and states the factual circumstances giving rise to the agency relationship, including the name of the alleged agent, the plaintiff has pled her cause of action with sufficient detail.

In her amended complaint, the plaintiff has alleged that the defendant held itself out as a medical care provider, that she relied on the defendants for competent and skillful medical care, that Drs. Kushner, Duncan, and Turnamian were agents, servants, or employees of York Hospital, that York Hospital had her in complete and unrestricted care and control at all relevant times, that she originally visited a hospital clinic, she was operated on at York Hospital, and that Dr. Duncan was consulted while she was in the hospital. (Amended complaint at ¶¶4, 6-8, 10, & 17.) The plaintiff met her burden by providing the defendant with adequate notice of the ostensible agency claim against it.

As to the defendant's final argument that it cannot be held vicariously liable for the negligence of Dr. Turnamian because the plaintiff has failed to support the essential elements of her negligence claim against Dr. Turnamian, we have already found that the plaintiff's expert testimony regarding Dr. Turnamian's alleged negligence is sufficient to withstand summary judgment. As the defendant admits that Dr. Turnamian was an employee of the hospital during the relevant period, we find that the plaintiff may proceed in her vicarious liability claim against the defendant for the alleged negligence of Dr. Turnamian.

## CONCLUSION

For the forgoing reasons, we grant the defendant's motion for summary judgment as to the plaintiff's corporate negligence claim and as to the plaintiff's vicarious liability claims based on the alleged negligence of defendant physicians Kushner and Duncan as employees or servants of the defendant and on the alleged negligence of defendant physician Kushner as an ostensible agent of the defendant. As to the plaintiff's vicarious liability claims based on the alleged negligence of the defendant physician Duncan as an ostensible agent of the defendant and on the alleged negligence of defendant physician Turnamian as an employee of the defendant, we find that there exist genuine issues of material fact and the defendant is not otherwise entitled to summary judgment as a matter of law.

The prothonotary is directed to send a copy of this opinion to all parties of record in this case.

## ORDER

And now, to wit, December 30, 1996, we hereby grant, in part, York Hospital's motion for summary judgment and enter judgment against the plaintiff and for the defendant, York Hospital, as to the following claims:

"(1) the plaintiff's corporate negligence claim;

"(2) the plaintiff's vicarious liability claims based on the alleged negligence of defendant physicians Kushner and Duncan as employees or servants of the defendant; and

"(3) the plaintiff's vicarious liability claim based on the alleged negligence of defendant physician Kushner as an ostensible agent of the defendant."

We hereby deny, in part, York Hospital's motion for summary judgment as to the following claims:

538

"(1) the plaintiff's vicarious liability claim based on the alleged negligence of defendant physician Duncan as an ostensible agent of the defendant; and

"(2) the plaintiff's vicarious liability claim based on the alleged negligence of defendant physician Turnamian as an employee of the defendant."

The prothonotary is directed to send notice of this order to all parties of record in this case.