# Batman v. Sedlovsky

C.P. of Northumberland County, no. CV-98-1732.

*Thomas Waffenschmidt,* for plaintiff.
*Steven D. Snyder,* defendant Sunbury Community Hospital.
*Michael M. Badowski,* for defendant Sedlovsky.
*C. Edward S. Mitchell,* for defendants French and Evangelical Radiological Assoc.
*Daniel L. Grill,* for defendant Radiological Associates Inc.
*David R. Bahl,* for defendant Evangelical Community Hospital.

SAYLOR, *J.,* June 25, 2002—In this medical malpractice action, plaintiff has asserted claims against Sunbury Community Hospital, upon the basis of both corporate negligence and vicarious liability. The hospital has filed a motion for partial summary judgment challenging the ability of the plaintiff to go forward under the corporate

negligence doctrine. After review of the evidence proffered by the plaintiff as to such a claim, the court finds that it is insufficient to establish a prima facie case of corporate liability against the hospital as recognized in *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991). Accordingly, partial summary judgment will be afforded the hospital as to such a claim.

The uncontroverted facts set forth in the pleadings and also established by discovery reveal that the plaintiff's decedent, a three and a half-week-old baby at the time, was taken by his mother to the hospital emergency room at 12:30 a.m. on December 19, 1996. She was concerned about his excessive vomiting and temperature. He was diagnosed as having a viral infection, and he was discharged with instructions to see his pediatrician. A chest x-ray was obtained, which was reviewed and interpreted by defendant, Michael Sedlovsky M.D., who made a report stating that this baby's cardiac silhouette appeared normal in size and configuration. Dr. Sedlovsky is a licensed radiologist, but he was neither a specialist in pediatric radiology nor board certified in the general field of radiology. The interpretation of this x-ray is challenged by plaintiff's experts, who state that this x-ray actually showed that the heart was *not* normal in size and configuration, but at the very least borderline enlarged, which then should have resulted in Dr. Sedlovsky making a referral for a cardiac echocardiography. Such a referral was not made by Dr. Sedlovsky.

The baby was subsequently examined on January 16, 1997, in the emergency department of Evangelical Community Hospital, and on the next day, additional x-rays

were taken by a different radiologist who interpreted them as being unremarkable. Likewise, on this occasion, the baby was discharged from Evangelical Community Hospital without a referral for cardiac echocardiography. The baby was subsequently seen by a pediatrician on January 30, 1997, for his two-month checkup. Unfortunately, on February 24, 1997, the baby was found unresponsive in his crib by his mother, and when the EMT's and advanced life support arrived at the home, the baby was found to be in cardiac arrest. He was pronounced dead approximately 40 minutes after his arrival at the hospital.

Thereafter, an autopsy revealed that the baby had suffered from complex heart disease and multiple defects which could have been discovered through a cardiac echocardiograph. Since his heart condition was never discovered, he never received any appropriate treatment for the heart problem.

In her amended complaint, plaintiff avers that the hospital is liable because it did not employ physicians or other health care providers who were competent and properly trained; by failing to have a "pediatric cardiologist" on staff; and, by failing to establish protocols for interpretation of pediatric x-rays and requiring the referral thereof.

In essence, plaintiff is attempting to assert a claim against the hospital under the corporate negligence doctrine as announced in *Thompson, supra,* that set forth the following areas of duties that a hospital owed to its patients: "(1) a duty to use reasonable care in the main-

tenance of safe and adequate facilities and equipment . . . ; (2) a duty to select and retain only competent physicians . . . ; (3) a duty to oversee all persons who practice medicine within its walls as to patient care . . . ; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients . . . ." *Id.* at 339-40, 591 A.2d at 707. (citations omitted)

As to these areas of exposure for direct liability on the part of a hospital, the Supreme Court conditioned a recovery upon the showing of a breach of one of the foregoing duties, and "forseeability" on the part of the hospital:

"It is important to note that for a hospital to be charged with negligence, it is necessary to show that the hospital had actual or constructive knowledge of the defect or procedures which created the harm." *Id.* at 341, 591 A.2d at 708.

Finally, the plaintiff must also establish that the hospital's negligence was a substantial factor in causing the harm to the injured party. *Id.; Walls v. Hazleton State General Hospital,* 157 Pa. Commw. 170, 629 A.2d 232 (1993). As summarized in *Whittington v. Episcopal Hospital,* 768 A.2d 1144, 1149 (Pa. Super. 2001):

"In order to present a prima facie case of corporate negligence, [plaintiff was] required to introduce evidence of the following: (1) [hospital] acted in deviation from the standard of care; (2) [hospital] had actual or constructive notice of the defects or procedures which created the harm; and (3) that the conduct was a substantial factor in bringing about the harm."

As to the first and third elements necessary to support a claim under the corporate negligence doctrine against the hospital, that is, breach of one of the duties and the causal connection thereof in relation to the patient's harm, it has also been established that expert testimony is necessary in all but obvious cases. *Welsh v. Bulger,* 548 Pa. 504, 514, 698 A.2d 581, 585 (1997); *Walls v. Hazleton State General Hospital, supra.*

In the case at bar, plaintiff points to the following two excerpts from the reports of her experts as providing the needed testimony that the hospital violated the duties outlined above in *Thompson:*

(1) the report of Charles S. Kleinman M.D., a pediatric cardiologist at the University of Florida College of Medicine, wherein he stated:

"I find myself wondering about the credentialing system at Sunbury Community Hospital. To allow a radiologist who has failed his board examination five times to continue to assume responsibility for the interpretation of x-rays in an emergency room caring for infants is of great concern. While it is not unusual for a physician fresh out of training to be allowed to practice while they are board-eligible, for hospital privileges to be maintained in the face of multiple failed attempts at board certification is not something I am personally familiar with. For Dr. Sedlovsky to have allowed his membership in RSNA and other radiologic societies to lapse while he is contemplating retirement, but still practicing radiology, speaks poorly for the hospital's ongoing credentialing process. I believe, therefore, that Sunbury Community must bear some corporate responsibility in this matter."

(2) the report of Janet L. Strife M.D., radiologist in chief at Children's Hospital and Medical Center in Cincinnati, Ohio, which states as follows:

"The fact that he took his exams five times and did not pass indicates that he is not very knowledgeable or well-trained. I am a board examiner and know that anyone that failed them this often certainly is not well-trained."

This is the extent of any reference in either report to the corporate negligence claim, which plaintiff argues is also bolstered by admissions of Dr. Sedlovsky that he was originally trained in the Ukraine as a urologist, prior to his immigration to the United States in 1976; his decision to practice radiology instead of urology, because of the long training required in both general surgery and urology; his failure to pass the exam required of foreign medical physicians in order to go into residency in the United States three or four times before he finally passed it; and his stated reason for failing the board certification exam five times because "it is kind of difficult to keep all that information in your head." There is also the fact that he is not a specialist in pediatric radiology. Dr. Sedlovsky also stated that he never took any specific courses or seminars in pediatric radiology.

Yet it is also clear that Dr. Sedlovsky was licensed to practice medicine in the Commonwealth of Massachusetts in 1984; the State of New York in 1985; and, in Pennsylvania in 1986. He has never had his medical license suspended, revoked or terminated, in any state. He received his training in radiology at Bridgeport Hospital, in Connecticut from 1980 through 1984, where he

completed his residency, which also included training in pediatric radiology. He estimated that over the past five years he had interpreted approximately 40 chest x-rays a year for children under the age of one year. There is no evidence that he has ever been previously sued for medical malpractice, or that he was ever reported for professional misconduct to the state licensing board pursuant to 35 P.S. §448.806(a).

In considering a motion for summary judgment, this court is aware that the entry of summary judgment may be granted only in cases where the right is clear and free from doubt, and that the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). When the plaintiff is the non-moving party, summary judgment for defendant is improper if the evidence, viewed favorably to the plaintiff, would support a recovery as pled. *Rauch v. Mike-Mayer,* 783 A.2d 815 (Pa. Super. 2001), *appeal denied,* 568 Pa. 634, 793 A.2d 909 (2002). Once a motion for summary judgment has been made and properly supported, a party seeking to avoid the imposition of summary judgment must show by specific facts by way of depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial. *Marks v. Tasman, supra.* In other words, the mere allegations in the pleadings are not sufficient in themselves but must be supported by evidence in the record establishing the facts essential to the cause of action. *Id.;* Pa.R.C.P. 1035.3.

In the case at bar, plaintiff contends that the hospital breached its duty to provide a competent staff, either because (1) the radiologist who reviewed the baby's x-ray did so improperly, in his reading of it or failing to refer it for a consult, or (2) by virtue of the fact there was not a "pediatric cardiologist" employed by the hospital. It is also argued that no policy was in place to provide guidelines for referral by the radiologist for a consult in this type of situation.

As to the competency of the radiologist here, this court finds that there has not been any evidence produced by plaintiff that meets the knowledge requirement under the *Thompson* standard; that is, an indication that the hospital knew or should have known that Dr. Sedlovsky was incompetent. A hospital is not *directly* liable just because a physician makes a mistake which allegedly constitutes malpractice.[1] *Edwards v. Brandywine Hospital,* 438 Pa. Super. 673, 652 A.2d 1382 (1995). There is nothing in the record of any previous instance where Dr. Sedlovsky did not perform his duties in a proper and professionally competent manner. For example, in *Corrigan v. Methodist Hospital,* 869 F. Supp. 1208 (E.D. Pa. 1994), plaintiff withstood a motion for summary judgment because the subject physician had previous medical malpractice suits brought against him. See also, *Raschel v. Rish,* 488 N.Y.S.2d 923 (1985). Certainly, notice of a previous malpractice action would have triggered an inquiry, usu-

---

1. As stated in *Edwards, supra,* acts of malpractice occur at the finest hospitals, and then the hospital is subject to liability under theories of respondeat superior or ostensible agency.

ally examined when he would come up for review for renewal of his medical staff privileges.

Thus, plaintiff cannot use this malpractice action or complaint, if proven, to then relate back to establish that the hospital should have had constructive notice that they had permitted staff privileges to an incompetent physician. See *Crumley v. Memorial Hospital Inc.*, 509 F. Supp. 531 (E.D. Tenn. 1978), *aff'd without opinion*, 647 F.2d 164 (6th Cir. 1981). In other words, prior to this incident, there is nothing in the record that would have previously placed the hospital on notice to have made inquiry or conducted an investigation with regard to his continuing qualifications to provide competent service. Cf. *Johnson v. Misericordia Community Hospital*, 301 N.W.2d 156 (Wis. 1980). When the hospital itself incurs liability under the corporate negligence doctrine, it is typically of a systemic nature. *Edwards v. Brandywine Hospital, supra.* This may then establish the requisite constructive notice, *i.e.,* it must have known but failed to act or its failure to be notified is caused by the complained of absence of supervision. *Whittington v. Episcopal Hospital*, 768 A.2d 1144 (Pa. Super. 2001). In the case at bar, plaintiff has failed to produce evidence of a systemic failure as the reason for the lack of knowledge, actual or constructive, as to the alleged incompetence of Dr. Sedlovsky.

The only knowledge of the plaintiff's experts as to the competency of Dr. Sedlovsky was their opinion that he did not properly interpret the x-rays here, and his failure to successfully pass the examination for board certification. Although plaintiff has not presented the court with

any information regarding board certification, it is well known that there are medical specialty boards that establish requirements for a physician to be recognized in a particular field as having some specialized expertise. In order to so qualify, it is necessary for such physician to complete additional training and pass certain examinations. There is usually a certain level of experience required so that there is a distinction between physicians who are board eligible and those who are board certified. Physicians who attain board certification are usually set apart from their peers as perhaps being more highly skilled and knowledgeable; however, it cannot be said that a physician who is not board certified lacks ordinary competence to discharge his duties. The level of care provided to a patient in any given instance may be equally and competently performed by a non-board certified physician.

Certainly, a hospital in a smaller size city, or any hospital for that matter, would not per se violate any duty to its patients by allowing staff privileges to non-board certified physicians.[2] In *Edwards, supra,* the standard of care applicable to a hospital is that of a "reasonable hospital under

---

2. The plaintiff's experts are specialists in pediatric cardiology at the University of Florida College of Medicine and Children's Hospital Medical Center in Cincinnati, Ohio, and one could very well expect that such institutions are providing the highest level of medical care to their patients with their resources and population base for support, and thus it may be expected that one could be treated at any time by a specialist on staff in pediatric radiology. Although there are more limited resources in hospitals in small cities and more rural areas, a high level of routine care is provided by a staff that can be more personal to a patient, and is not concerned with the time consuming teaching aspect to students.

similar circumstances." *Id.,* 438 Pa. Super. at 683, 652 A.2d at 1387. It cannot be expected that a community hospital in a small city would have *only* board certified physicians attend its patients, or engage a "pediatric radiologist." Moreover, there has not been proffered any expert testimony relative to typical staffing arrangements of a reasonably competent hospital under similar circumstances.

This then brings us to plaintiff's other argument that the hospital should have had in place a policy for referral to a pediatric radiologist in this type of a situation. A similar contention was made in *Edwards, supra,* that the hospital was deficient for adopting a rule allowing its physicians complete discretion in deciding when to consult an expert, which was answered by the court as follows: "But to make out a viable *Thompson* claim, [plaintiff] would have to prove that the hospital knew or should have known that his doctors were not seeking expert advice when they should have." *Id.* at 685, 652 A.2d at 1387. Likewise, plaintiff has not produced any evidence of any knowledge on the part of the hospital that the radiologists acted or failed to act in requesting consults or referrals on other occasions on a negligent basis. The other difficulty this court has with the plaintiff's argument in this regard is that the plaintiff has not provided any guidance by way of an expert report, or otherwise, as to the standard of care generally employed by hospitals in establishing a policy of referral, or if any similarly situated hospitals even have such policies. The determination as far as whether to request or obtain a consultation appears to be one within the medical judgment of the physician familiar with the patient. It would

appear to be a very difficult task to set forth a policy to govern every possible situation in which a staff physician may or may not request a consult. No authority has been presented by plaintiff to support such a proposition. In any event, plaintiff has not produced any expert report in this regard. The procedures ordinarily employed by hospitals or physicians in determining when a consult should be obtained are certainly outside the realm of the ordinary experience of any lay person, and thus some guidance by way of expert testimony would be necessary in this regard.

In view of all of the foregoing, this court enters the following:

## ORDER

And now, June 25, 2002, the motion for partial summary judgment is granted on behalf of the defendant, Sunbury Community Hospital, as plaintiff has not offered sufficient evidence to meet the requirements for a prima facie case of direct liability of such hospital under the corporate negligence doctrine.