430 A.2d 647

**Anna Marie CAPAN, Administratrix of the Estate of Frank M. Capan, Deceased, Appellant**

**v.**

**DIVINE PROVIDENCE HOSPITAL, a corporation, Raimund Rueger, M. D., J. R. Friday, M. D., G. Ray Vilsack, M. D., Robert Clevenger, M. D., Alfred R. Price, M. D., Individuals,**

**v.**

**Philip POLLICE, M. D.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed Oct. 10, 1980.

Reargument Denied June 12, 1981.

Petition for Allowance of Appeal Denied Dec. 2, 1981.

Thomas W. Trimm, Pittsburgh, for appellant.

David H. Trushel, Pittsburgh, for Vilsack, appellee.

George M. Weis, Pittsburgh, for Hospital, appellee.

Harry J. Zimmer, Pittsburgh, for Rueger and Clevenger, appellees.

Ronald H. Heck, Pittsburgh, for Friday, appellee.

Bruce R. Martin, Pittsburgh, for Pollice, appellee.

Before CERCONE, President Judge and CAVANAUGH, and HOFFMAN, JJ.

HOFFMAN, Judge:

The issue presented by this case is whether the lower court erred in failing to instruct the jury that it could find appellee Divine Providence Hospital vicariously liable for the negligence of appellee Dr. Philip Pollice despite the fact that the doctor was an independent contractor. We conclude that the court should so have instructed the jury and,

accordingly, reverse the order of the court below and remand for new trial.

Appellant's decedent, Frank M. Capan, was admitted to Divine Providence Hospital via the emergency room on November 17, 1972, for treatment of a severe nosebleed. While in the hospital, Mr. Capan developed delerium tremens and became violent. On November 23, 1972, appellee Dr. Pollice was "on call" to answer any emergencies arising in the hospital. That afternoon, the nursing staff summoned Dr. Pollice to Mr. Capan's room because of the patient's combative and violent actions. The doctor administered a series of drugs to Mr. Capan in an attempt to calm him. After Dr. Pollice left the hospital that evening, Mr. Capan experienced cardiac arrest and died after unsuccessful efforts to resuscitate him.[1]

Appellant brought wrongful death and survival actions against Divine Providence Hospital and five physicians. Two of the physicians then joined Dr. Pollice as an additional defendant. The lower court granted Dr. Pollice's motion for judgment on the pleadings as to the wrongful death action. The case then went to trial. At the close of plaintiff's case, the court granted nonsuits in favor of all of the doctors except Dr. Pollice. The case was submitted to the jury with special interrogatories, the first of which provided: "Was Dr. Philip Pollice in treating the decedent Frank M. Capan acting as an employee of Divine Providence Hospital? After you have answered that question, you will proceed to the second question. If your answer to number one was 'no,' you do not proceed further." [2] The jury

1. For a more detailed description of the facts of the case, *see Capan v. Divine Providence Hospital*, 270 Pa.Super. 127, 410 A.2d 1282 (1979).

2. By so structuring the special interrogatories, the lower court precluded the jury from determining whether Dr. Pollice's treatment of Mr. Capan had been negligent and had proximately caused Mr. Capan's death. Appellant did, however, present evidence suggesting that Dr. Pollice's negligence had led to the death of Mr. Capan. Because we conclude that the lower court should have instructed the jury that it could find Divine Providence Hospital vicariously liable for the negligence of Dr. Pollice, it is essential that on remand the

returned a verdict of "no" to the first question. The court molded that verdict to read "for the defendant Divine Providence Hospital and the additional defendant Philip Pollice, M.D. and against the plaintiff."

Appellant appealed to this Court from the denial of her post-trial motions. She contended, *inter alia*, that the lower court should have charged the jury, in accord with various provisions of the Restatement (Second) of Torts, that it could find Divine Providence Hospital vicariously liable for any negligent treatment Dr. Pollice rendered to Mr. Capan. We held that appellant had not properly preserved this issue for our review and affirmed the judgment of the lower court. *Capan v. Divine Providence Hospital*, 270 Pa.Super. 27, 410 A.2d 1282 (1979) (Opinion of CERCONE, P. J., with two judges concurring in the result). Appellant then sought review by the Supreme Court of Pennsylvania. By order dated January 31, 1980, the Supreme Court vacated our order and remanded the case to our Court "with instructions to decide whether or not the trial court erred in failing to instruct the jury on the Restatement of Torts (2nd) Sects. 429, 416, 427, & 323."

As a general rule, an employer is not liable for torts committed by an independent contractor in his employ. *McDonough v. U. S. Steel Corp.*, 228 Pa.Super. 268, 324 A.2d 542 (1974). We have, however, recognized an exception to the general rule, stated in section 429 of the Restatement (Second) of Torts, which provides

One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

jury be permitted to determine whether Dr. Pollice's treatment of Mr. Capan was negligent and the role of any such negligence in the death of Mr. Capan.

Restatement (Second) of Torts § 429 (1965). In *Ostrowski v. Crawford Door Sales Co.*, 207 Pa.Super. 424, 217 A.2d 758 (1966), we held that section 429 authorized recovery against a door seller for injuries sustained by a third party as a result of negligent installation of the door by the seller's independent contractor. Several factors led us to conclude that the door installation was accepted in the reasonable belief that it was performed by the seller, including: the fact that the seller's contract required it to provide an installed door; the contract price included installation; and the buyer had no reason to believe that a third party was installing the door.

The section 429 approach to vicarious liability has been denominated the "ostensible agency" theory. S. Haskell, *Hospital Responsibility for Physician Negligence: Changing Concepts of Liability*, 1 Med. Malprac. Cost Containment J. 32, 36 & n.16 (1979). Several courts have applied the ostensible agency concept to cases involving hospital liability for the negligence of independent contractor physicians. *See, e. g., Seneris v. Haas*, 45 Cal.2d 811, 291 P.2d 915 (1955); *Mehlman v. Powell*, 281 Md. 269, 378 A.2d 1121 (1977); *Grewe v. Mt. Clemens Hospital*, 404 Mich. 240, 273 N.W.2d 429 (1978); *Howard v. Park*, 37 Mich.App. 496, 195 N.W.2d 39 (1972); *Mduba v. Benedictine Hospital*, 52 App.Div.2d 450, 384 N.Y.S.2d 527 (1976) (alternative holding); *Lundberg v. Bay View Hospital*, 175 Ohio St. 133, 191 N.E.2d 821 (1965); *Adamski v. Tacoma General Hospital*, 20 Wash.App. 98, 579 P.2d 970 (1978). *See also Darling v. Charlestown Community Memorial Hospital*, 33 Ill.2d 326, 211 N.E.2d 253 (1965). The courts in these cases concluded that despite the fact that a physician holds independent contractor status with respect to a hospital, he *may* nonetheless be an agent of the hospital with respect to the patient. Two factors contributed to this conclusion. First, the changing role of the hospital in society creates a likelihood that patients will look to the institution rather than the individual physician for care. *See Grewe v. Mt. Clemens Hospital, supra*, 404 Mich. at 251–52, 273 N.W.2d at 433. As the court noted in *Bing v.*

*Thunig,* 2 N.Y.2d 656, 666, 163 N.Y.S.2d 3, 11, 143 N.E.2d 3, 8 (1957),[3]

> The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and interns, as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action.

Thus, a patient today frequently enters the hospital seeking a wide range of hospital services rather than personal treatment by a particular physician. *Id.; Mduba v. Benedictine Hospital, supra.* It would be absurd to require such a patient to be familiar with the law of respondeat superior and so to inquire of each person who treated him whether he is an employee of the hospital or an independent contractor. *Seneris v. Haas, supra* at 831, 291 P.2d at 927; *Adamski v. Tacoma General Hospital, supra* at 112, 579 P.2d at 978. Similarly, it would be unfair to allow the "secret limitations" on liability contained in a doctor's contract with the hospital to bind the unknowing patient. *Mduba v. Benedictine Hospital, supra,* at 453, 384 N.Y.S.2d at 529.

The second factor justifying a finding of an "ostensible agency" relationship between hospital and physician exists where the hospital "holds out" the physician as its employee.[4] *Brown v. Moore,* 247 F.2d 711 (3rd Cir. 1957) (applying

3. Although the court in *Bing* was faced with the issue of hospital liability for the negligence of its nursing staff, the court's observations on the role of hospitals are equally applicable to the case at bar.

4. Based upon this "holding out" concept, some courts refer to the ostensible agency theory as "agency by estoppel." *See, e. g., Howard v. Park, supra; Lundberg v. Bay View Hospital, supra.* The ostensible agency theory is also substantially similar to the doctrine of apparent authority. *Mehlman v. Powell, supra,* at 272, 378 A.2d at 1123–24; Restatement (Second) Agency § 267 (1958).

Pennsylvania law) (alternative holding); *Howard v. Park, supra* at 499, 195 N.W.2d at 40; *Lundberg v. Bay View Hospital, supra* at 135, 191 N.W.2d at 823; *Adamski v. Tacoma General Hospital, supra* at 112, 579 P.2d at 978–79. A holding out occurs "when the hospital acts or omits to act in some way which leads the patient to a *reasonable* belief he is being treated by the hospital or one of its employees." *Adamski v. Tacoma General Hospital, supra* at 115, 579 P.2d at 979 (emphasis added). Thus, the court in *Adamski* concluded that the hospital had held an emergency room physician out as its agent by providing emergency room care, failing to advise the patient that he was not being treated by the hospital's agent, and providing him with written instructions advising him to return for further treatment if he could not contact his personal physician. *Id.*

By denying appellant's proposed point for charge embodying section 429, the lower court took away from the jury the issue of ostensible agency. This action by the lower court was improper because the jury could reasonably have determined that both of the factors relevant to a finding of ostensible agency were present. Mr. Capan entered the hospital through the emergency room. Dr. Pollice treated him in his capacity as house physician not as Mr. Capan's personal physician. Thus, the jury could have concluded that Mr. Capan relied upon the hospital rather than Dr. Pollice himself for treatment. Additionally, the jury could have found that Divine Providence Hospital held out Dr. Pollice as its employee by providing his services for dealing with emergencies within the hospital. Divine Providence Hospital does not contend that it informed Mr. Capan of Dr. Pollice's independent contractor status nor does it cite any reason why Mr. Capan should have been on notice of that status. We therefore conclude that the lower court erred in failing to instruct the jury on the substance of appellant's proposed point for charge with respect to section 429 and the

theory of ostensible agency. Accordingly, appellant is entitled to a new trial.[5]

Judgment vacated and case remanded for new trial.

5. The other Restatement sections cited by our Supreme Court in remanding this case have been adopted by the courts of this Commonwealth. *Philadelphia Electric Company v. Julian*, 425 Pa. 217, 228 A.2d 669 (1967) (adopting Restatement (Second) of Torts §§ 416, 427); *Hamil v. Bashline*, 243 Pa.Super. 227, 364 A.2d 1366 (1976) (adopting Restatement (Second) of Torts § 323). Because of our disposition of this case, however, we do not consider it necessary to determine the applicability of these additional Restatement sections.