Connors v. Dawgert

## Connors v. Dawgert

C.P. of Lackawanna County, no. 95 CV 4109.

*Daniel L. Thistle,* for plaintiff.
*Jack Hartman,* for defendants Dawgert and Zukowski.
*Linda Porr Sweeney,* for defendant Mercy Hospital.
*Evan Black,* for defendant Geisinger Medical Center.

MINORA, *J.,* September 16, 1998—This matter is before the court by way of defendant's motion for summary judgment. Suit in this medical malpractice case was instituted on August 30, 1995 to recover personal injuries on a cause of action which arose between the dates of May 24, 1985 and June 14, 1985.

## FACTS

As alleged in the complaint, minor plaintiff Michelle Connors was born on April 26, 1985. Relevant to this action, she was initially evaluated by defendants Dawgert and Zukowski at their office on May 24, 1985, following complaints of "twitching," "feeling poorly," and "not feeling well." She was examined by Dr. Dawgert who detected signs of spinal meningitis. She was promptly admitted to Mercy Hospital.

As alleged, no viral cultures were taken at Mercy Hospital, and no medications for treating viral spinal meningitis were initiated. Bacterial cultures were obtained and medication for bacterial spinal meningitis was started.

The plaintiff was transferred to Geisinger Medical Center on May 27, 1985. She received medical care from defendants Ryan and Wallace throughout this hospitalization. Spinal fluid viral cultures were obtained, with a diagnosis of viral meningitis made. Plaintiff alleges that the spinal fluid was not tested specifically for herpes virus, and no anti-viral medication was given.

It is alleged that the minor plaintiff developed static encephalopathy secondary to herpes encephalitis, manifested by partial paralysis, palsy, blindness, psychomotor delay, seizure disorder, and other conditions. Minor plaintiff is currently a resident of a long-term care facility, requiring continuous nursing care, ongoing medical attention and hospitalizations. She is described as being brain damaged and profoundly retarded.

Presently, the issue before this court is whether plaintiffs have demonstrated a cause of action under either the theory of ostensible agency or corporate negligence.

On or about August 30, 1985, a complaint for a medical malpractice action was filed on behalf of minor

plaintiff, Michelle Connors, based on treatment Connors received as an infant in 1985.

(1) Defendant filed motion for summary judgment on May 5, 1998; (2) plaintiff filed a response on May 12, 1998; (3) oral argument was heard before this court on July 20, 1998; (4) the parties have briefed their respective position. This memorandum and order follows.

## DISCUSSION

A motion for summary judgment places the burden of proof upon the moving party. The moving party must show that there exists no genuine issue of material fact. Pa.R.C.P. 1035.2. The moving party must be entitled to judgment as a matter of law. *Overly v. Kass*, 382 Pa. Super. 108, 554 A.2d 970 (1989). "The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. . . . [A]n entry of summary judgment is granted only in cases where the right is clear and free of doubt." *Accu-weather v. Prospect Communications,* 435 Pa. Super. 93, 99, 644 A.2d 1251, 1254 (1994) (citations omitted); *Pennsylvania State University v. University Orthopedics Ltd.,* 706 A.2d 863, 867 (Pa. Super. 1998).

Effective July 1, 1996, the New Rules of Civil Procedure 1035.1 through 1035.5 governing summary judgment replace former Rule 1035. The essence of the revision set forth in New Rule 1035.2 is that the motion for summary judgment now encompasses two concepts: first, the absence of a dispute as to any material fact as set forth in *Accu-weather* and *Pennsylvania State University, supra,* and second, the absence of evidence sufficient to permit a jury to find a fact essential to a cause of action or a defense. New Rule 1035.2 is

explicit in authorizing a motion based upon a record which is insufficient to sustain a prima facie case which in a jury trial would require the issues to be submitted to a jury. In sum, it allows a movant for summary judgment to prove an essential negative.

Applying these revised Rules of Civil Procedure to the case at bar, we shall proceed to the defendant's motion for summary judgment.

## ISSUE I

This court's initial inquiry focuses on whether Drs. Dawgert and Zukowski were ostensible agents of Mercy Hospital.

Ostensible agency is the designated term for section 429 Restatement (Second) of Torts' approach to vicarious liability. *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 368, 430 A.2d 647, 648 (1980). This theory has been previously utilized in cases involving hospital liability for the negligence of independent contractor physicians. *Id.* at 368, 430 A.2d at 649. The *Capan* court identified two factors in which hospitals can be held liable under the ostensible agency theory for physicians. *Id.*

First, a hospital is liable under this theory when the patient looks "to the institution rather than the individual physician for care." *Id.* The *Capan* court illustrated this point by acknowledging that the modern trend consists of patients seeking hospital services rather than treatment by a particular physician. *Id.* at 369, 430 A.2d at 649.

The second factor exists where the hospital "holds out" the physician as its employee. *Id.* The Pennsylvania Superior Court explained that a holding out occurs "when the hospital acts or omits to act in some way

which leads a patient to reasonable belief he is being treated by the hospital or one of its employees." *Id.* at 370, 430 A.2d at 649, citing *Adamski v. Tacoma General Hospital,* 20 Wash. App. 98, 579 P.2d 970 (1978).

Mercy argues that no ostensible relationship existed between themselves and Drs. Dawgert and Zukowski, because Connors initially sought treatment from these doctors in their offices rather than at the hospital itself. In addition, Mercy maintains that there is no evidence suggesting Connors considered Drs. Dawgert and Zukowski to be agents of Mercy Hospital.

Despite the fact that Dr. Zukowski was chief of pediatrics at Mercy Hospital at the time, Mercy asserts that he had no control over other physicians' decisions to admit pediatric patients into the hospital. Finally, Mercy stresses that aside from Dr. Zukowski's limited role as chief of pediatrics, the only other connection with both doctors and the hospital was the doctors' admitting privileges there.

In stark contrast, Connors argues that Dr. Zukowski admitted in his deposition that as chief of pediatrics he would oversee both clinical activities and performance of pediatrics. Additionally, Connors stated that because Mercy Hospital is a corporation and as such the hospital can only act through its officers, directors or agents. Connors claims that Dr. Zukowski's position as chief of pediatrics clearly indicates that he was an agent of Mercy Hospital.

In the instant case, we find that there is an unresolved issue of fact as to whether Mercy held out Dr. Zukowski as its employee based on his status as chief of pediatrics. Additionally, we find that is unclear as to whether Dr. Dawgert's action of admitting Connors to Mercy Hospital to be treated by his partner Dr. Zukowski con-

stituted an agency relationship. Since there are genuine issues of material fact as to the relationship between Drs. Dawgert and Zukowski and Mercy Hospital, summary judgment is clearly not appropriate in this matter.

## ISSUE II

This court will now address the second issue whether the doctrine of corporate negligence is applicable. Under this theory, "a corporation, specifically, a hospital, can be held directly liable for negligence." *Welsh v. Bulger,* 548 Pa. 504, 512, 698 A.2d 581, 585 (1997). The Pennsylvania Supreme Court first defined this concept in 1991 when it stated that:

"Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed to the patient, which is to ensure the patient's safety and well-being while at the hospital. This theory of liability creates a nondelegable duty, which the hospital owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party." *Thompson v. Nason Hospital,* 527 Pa. 330, 339, 591 A.2d 703, 707 (1991).

In 1997, the Pennsylvania Supreme Court relied on this earlier *Thompson* decision and reiterated the specific duties a hospital has as the following:

"(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients." *Welsh, supra* at 512, 698 A.2d at 585, citing *Thompson v. Nason Hospital, supra* at 339-40, 591 A.2d at 707.

Additionally, the Pennsylvania Supreme Court announced that a cause of action for corporate negligence "arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees." *Moser v. Heistand,* 545 Pa. 554, 560, 681 A.2d 1322, 1326 (1996).

By applying the doctrine of corporate negligence, the Pennsylvania Supreme Court declared that in order to establish this claim, "a plaintiff must show that the hospital had actual or constructive knowledge of the defect or procedures that created the harm." *Welsh, supra.*

In concluding its analysis of corporate negligence, the *Welsh* court addressed the type of evidence necessary to prove this cause of action. The *Welsh* court stated that "unless a hospital's negligence is obvious, a plaintiff must produce expert testimony to establish that the hospital deviated from an accepted standard of care and that the deviation was a substantial factor in causing the harm to the plaintiff." *Id.*

Mercy's contention against allegations of corporate negligence is twofold. First, Mercy suggests that there is no criticism of Dr. Zukowski in his role as chief of pediatrics. However, Mercy fails to acknowledge that one of Connors' experts found that because Dr. Zukowski was chief of pediatrics he should have been aware of the hospital's lack of available consultants. Second, Mercy claims that no expert testimony was presented which criticized the hospital for lacking adequate facilities. Once again, Mercy recognized that an expert witness for Connors concluded that Mercy did lack adequate facilities to care for a child in the above-mentioned condition. However, Mercy maintains that this expert was not criticizing the hospital for lacking these facilities but rather was criticizing the physician for not transferring the child to another hospital.

Conversely, Connors claims these experts have found two distinct causes of action of corporate negligence against Mercy Hospital.

Initially, Connors argues that experts are critical of Mercy Hospital itself for permitting an infant this ill to be cared for in a pediatric ward. Connors asserts that this expert opinion is directed against the hospital itself and thus complies with the requirements set forth in *Thompson, supra,* and *Welsh, supra,* which hold that a hospital can be directly liable if the appropriate criticism is contained in an expert report.

Furthermore, Connors contends that their expert criticizes Dr. Zukowski in his role as chief of pediatrics for permitting a child to remain at Mercy even though Mercy did not have appropriate consultants or appropriate facilities to care for this critically ill infant.

In light of the above facts, as well as the legal elements necessary for a cause of action under corporate negligence, we find that there are genuine issues of material fact which exist. The issues consist of expert testimony suggesting that Mercy deviated from an accepted standard of care and that deviation was in fact a substantial factor in causing Connors harm. If a jury chose to believe that expert's testimony, the necessary elements of the causes of action for corporate negligence would be met. Therefore, viewing the evidence in light most favorable to the non-moving party and accepting the facts as averred in Connors' brief, Mercy's motion for summary judgment is denied.

## CONCLUSION

Based upon the above reasoning, the defendant, Mercy Hospital's, motion for summary judgment on the theories of ostensible agency and corporate negligence is denied. An appropriate order follows.

## ORDER

And now, to wit, September 16, 1998, it is hereby ordered that the defendant, Mercy Hospital's, motion for summary judgment is denied.