# Pennington v. Lawrence County Family Medicine Inc.

C.P. of Lawrence County, no. 10543 of 2003.

*Susan M. Papa* and *Daniel S. Soom,* for plaintiff.
*Gayle L. Godfrey,* for defendants Jameson Memorial Hospital and Jameson Health System.

COX, *J.,* February 28, 2007—Before this court for disposition is defendants Jameson Memorial Hospital and Jameson Health System's[1] motion for partial summary judgment.[2] Each party has filed briefs in support of their respective position and on January 29, 2007, oral argument was held on the motion. Based on the evidence presented, this court makes the following findings of fact:

## I. FACTUAL BACKGROUND

This case arises out of the death of Delbert Joseph Pennington. Plaintiff submitted to this court an expert report published by Dr. William F. Miser to support her claims against all defendants. In this report, Dr. Miser describes, inter alia, sporadic treatment provided by

---

1. Hereinafter, defendants will be referred to as Jameson.

2. Plaintiff has raised claims of negligence against these defendants on the basis of (1) respondeat superior, (2) ostensible agent, and (3) corporate liability. Also, plaintiff has based a claim of liability against these defendants on the basis of improper record keeping. The motion now before this court is only directed toward the professional negligence theories.

Jameson Emergency Room over a two-year period for abdominal discomfort and chest pain. The hospital records illustrate that during this treatment, Jameson provided decedent with antacid and pain reliever, and then advised him to receive follow-up treatment from his family physicians, Dr. David Shober and Dr. Stephen Ritz. On May 15, 2001, decedent suffered cardiac arrest from which he did not recover, and was pronounced dead at the former St. Francis Hospital, located in New Castle, Pennsylvania, at 2:20 p.m. Based on Dr. Miser's review of the treatment records, he opined with a high degree of medical certainty that Dr. Shober and Dr. Ritz were negligent in their care of decedent. However, in his conclusion, Dr. Miser does not criticize any of the treatment provided by defendant Jameson.

In a deposition of Dr. Shober, he stated that he was a staff member at Jameson Hospital from 1995 until the present time. However, there are no facts presented to this court that suggests he treated decedent in that capacity during the relevant time in which plaintiff's claim rests. Nor do any facts suggest Dr. Ritz ever treated decedent as a staff member of Jameson. All treatment rendered by the doctors was in their capacity as decedent's family physicians.

## II. SUMMARY JUDGMENT

Summary judgment is a procedural tool utilized to dispose of cases in which no genuine issue of material fact remains in dispute. *Ertel v. Patriot-News Company,* 544 Pa. 93, 674 A.2d 1038 (1996), *reargument denied* (1996), *certiorari denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed

2d 401 (1996). Only after all relevant pleadings have closed and it is established that there exists "no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report" is summary judgment properly granted. *Grossman v. Barke,* 868 A.2d 561, 566 (Pa. Super. 2005), citing *Morningstar v. Hallett,* 858 A.2d 125 (Pa. Super. 2004). A material fact is one that directly affects the outcome of the case. See *Gerrow v. Shincor Silicones Inc.,* 756 A.2d 697 (Pa. Super. 2000); see also, *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662 (Pa. Super 2000).

When determining whether summary judgment is appropriate, the court must view the record in the light most favorable to the non-moving party. *Dean v. PennDOT,* 561 Pa. 503, 508, 751 A.2d 1130, 1132 (2000). However, the non-moving party cannot rely solely on its pleadings. *George Stash & Sons v. New Holland Credit Company,* 905 A.2d 541, 542-43 (Pa. Super. 2006). Rather, he or she has a responsibility to respond to a motion for summary judgment and demonstrate through specific facts that a genuine issue of material fact remains in dispute for trial. *Phaff v. Gerner,* 451 Pa. 146, 149-50, 303 A.2d 826, 829 (1973); *DeSantis v. Frick Company,* 745 A.2d 624 (Pa. Super. 1999); see also, *Johnson v. Harris,* 419 Pa. Super 541, 549, 615 A.2d 771, 775 (1992) (citations omitted) (stating that it is the non-moving party's duty "to show that a genuine issue of fact exists by affidavit or otherwise.").

Failure to respond appropriately allows the court, in its discretion, to enter summary judgment in favor of the

moving party. *Stoutmire v. GE,* 68 D.&C.4th 519, 522 (Mercer Cty. 2004).

Based on the forthcoming analysis, this court is of the opinion that plaintiff, the non-moving party, has failed to establish that a genuine issue of material fact remains in dispute as to plaintiff's theories of liability against Jameson Memorial Hospital and Jameson Health System. Accordingly, this court grants defendants' motion for partial summary judgment.

## III. THEORIES OF LIABILITY

To establish a cause of action sounding in negligence, a plaintiff must establish:

"(1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks;

"(2) failure on the part of the defendant to conform to that standard of conduct, *i.e.,* a breach of duty;

"(3) a reasonably close causal connection between the breach of duty and the injury sustained; and

"(4) actual loss or damages that result from the breach." *Rauch v. Mike-Mayer,* 783 A.2d 815, 824 n.8 (Pa. Super. 2001). (citations omitted)

"The mere fact that an accident has occurred does not entitle the injured person to a verdict. . . . A plaintiff must show that the defendant owed a duty of care, and that this duty was breached." *Id.* In the case at bar, the plaintiff asserts three theories under which Jameson may be held liable:

### a. *Respondeat Superior*

In *Tonsic v. Wagner,* 458 Pa. 246, 329 A.2d 497 (1974), the Pennsylvania Supreme Court expressed that a hospital may be found liable for the negligent acts of a doctor on the theory of respondeat superior. Under this doctrine, a hospital's negligence is not predicated on direct liability, but rather based on the negligent acts of a third-party employee. Thus, a hospital may be held liable for the negligent acts of a staff member if such acts are committed within the course and scope of the staff member's employment. See *Valles v. Albert Einstein Medical Center,* 569 Pa. 542, 551, 805 A.2d 1232, 1237 (2002), citing *Lunn v. Boyd,* 403 Pa. 231, 169 A.2d 103 (1961).

The first issue that must be resolved is whether an employee of Jameson performed any of the negligent acts that were the proximate cause of decedent's death. The Supreme Court provided numerous factors to analyze when determining whether a person is an employee:

"(1) Control of the manner work is to be done;

"(2) responsibility for result only;

"(3) terms of agreement between the parties;

"(4) the nature of the work or occupation;

"(5) skill required for performance;

"(6) whether one employed is engaged in a distinct occupation or business;

"(7) which party supplies the tools;

"(8) whether payment is by the time or by the job;

"(9) whether work is part of the regular business of the employer;

"(10) [whether] there is a right to terminate the employment at any time." *Id.* at 552, 805 A.2d at 1237-38, quoting *Shafer v. State Employes' Retirement Board,* 548 Pa. 320, 696 A.2d 1186 (1997).

However, no factor is "absolutely dispositive of a person's status as an employee, and each case must be determined on its own facts." *Valles* at 552, 805 A.2d at 1238, quoting *Budzichowski v. Bell Telephone Co. of Pennsylvania,* 503 Pa. 160, 164, 469 A.2d 111, 113 (1983).

In the instant case, there is no evidence that persuades this court to believe Dr. Shober or Dr. Ritz were employees or servants of Jameson. Rather, the facts clearly demonstrate that decedent received treatment from emergency room personnel at Jameson and then advised to obtain follow-up treatment from his *family physicians,* Dr. Shober and Dr. Ritz. (emphasis added) Even though Dr. Shober testified at his deposition that he was a staff member at Jameson, he was not acting in this capacity while providing the relevant medical care. Medical records clearly evince that the treatment Dr. Shober provided to decedent occurred in his personal office, which was located outside of the hospital's walls. Further, plaintiff did not present evidence suggesting Jameson recommended or instructed Dr. Shober on the type of treatment decedent required.

Moreover, the mere fact that Dr. Ritz provided medical care to decedent during his hospitalization does not support a finding of an employer-employee relationship between this doctor and defendant Jameson. Quite contrary, Dr. Miser's report indicates that Dr. Ritz, *a col-*

*league of Dr. Shober,* was decedent's admitting physician. (emphasis added) Dr. Miser makes no reference that would suggest Dr. Ritz acted in the capacity of the hospital. Although Dr. Ritz was referred to as the admitting physician at Jameson, this is a function that can be performed by any private physician with admitting privileges at the hospital. Additionally, the record is again absent of any evidence suggesting Jameson controlled the treatment provided by Dr. Ritz. Rather, this court finds that Jameson, being only one of two hospitals in the area, merely provided a bed and medical equipment for Dr. Ritz to utilize during the hospitalization of his patient. The language used by Dr. Miser, referring to Dr. Ritz as Dr. Shober's colleague, further convinces this court that Dr. Ritz was acting as decedent's family physician and not a hospital employee.

In conclusion, this court finds that an employer-employee relationship did not exist between defendant Jameson and defendants Dr. Shober and Dr. Ritz. Thus, this court rejects plaintiff's theory of liability against defendant Jameson on the basis of respondeat superior.

### b. *Corporate Liability*

In *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991), the Pennsylvania Supreme Court adopted the doctrine of corporate liability against hospitals. To establish corporate negligence, the plaintiff must demonstrate that the hospital failed "to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." *Id.* at 339, 591 A.2d at 707. "This theory

of liability creates a nondelegable duty which the hospital owes directly to the patient." *Id.* The duty of care owed by a hospital to a patient brought into its emergency room is set forth by Restatement (Second) of Torts §323 (1965), which states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability . . . for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking." *Id.* at 340, 591 A.2d at 708, citing *Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 475 A.2d 1314 (1984).

The Supreme Court identified four duties to which a hospital is held: "(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment . . . ; (2) a duty to select and retain only competent physicians . . . ; (3) a duty to oversee all persons who practice medicine within its walls as to patient care . . . ; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients." *Id.* at 339-40, 591 A.2d at 707. (citations omitted) Failure to uphold the proper standard of care allows an injured party to establish a direct cause of action under the corporate liability doctrine against the hospital, without regard to the negligence of a third party such as a doctor or nurse. *Welsh v. Bulger,* 548 Pa. 504, 513, 698 A.2d

581, 585 (1997), citing *Moser v. Heistand,* 545 Pa. 554, 558, 681 A.2d 1322, 1325 (1996).

To establish a prima facie case of corporate negligence, the plaintiff must establish all of the following:

"(1) the hospital acted in deviation from the standard of care;

"(2) the hospital had actual or constructive notice of the defects or procedures which created the harm; and

"(3) that the conduct was a substantial factor in bringing about the harm." *Rauch, supra,* 783 A.2d 815, 827, citing *Thompson, supra* at 339-40, 591 A.2d at 707-708. In demonstrating that the hospital deviated from an acceptable standard of care, the plaintiff must demonstrate through expert testimony that the hospital's action or non-action "deviated from an accepted standard of care and the deviation was a substantial factor in causing harm to the plaintiff" before a claim of corporate negligence will be found to have merit. *Welsh* at 514, 698 A.2d at 585.[3] The Supreme Court does not require the expert to use specific language when expressing his opinion, but rather requires the courts to focus on the substance of the testimony. *Id.,* citing *Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990).

---

3. If "the matter under investigation is so simple, and the lack of skill or want of care so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons," expert testimony is not required. *Welsh, supra,* quoting *Chandler v. Cook,* 438 Pa. 447, 451 n. 1, 265 A.2d 794, 796 n.1 (1970). However, this court finds that the facts of this case do not plainly demonstrate negligence on behalf of the hospital, and expert testimony is required to support plaintiff's claim.

In the case at bar, plaintiff's complaint alleges that Jameson knew or should have known that defendant physicians were unqualified to diagnose and treat decedent for the conditions he presented. To support this claim, plaintiff produced an expert report created by Dr. Miser. In this report, Dr. Miser discusses the relevant treatment history provided by Jameson and Drs. Shober and Ritz. Upon evaluation of this treatment, Dr. Miser concluded to a high degree of medical certainty that both Dr. Shober and Dr. Ritz were negligent in the treatment they provided, but does not suggest that the treatment provided by the Jameson Emergency Room was faulty in any way. Rather, Dr. Miser clearly stated that it was Dr. Shober's duty to consider a cardiac etiology in light of the symptoms decedent was complaining of and the results of the electrocardiograms performed by the staff at Jameson. Furthermore, Dr. Shober did not provide treatment to decedent at Jameson, but rather at his personal office. Therefore, Jameson did not owe decedent a duty to supervise the treatment Dr. Shober provided.

Dr. Miser was critical of the treatment provided by Dr. Ritz during decedent's hospitalization for pancreatitis. Although an argument can be made that Jameson failed in its duty to oversee the treatment provided by Dr. Ritz within the walls of its facility in this instance, there is no evidence to support this contention. As Justice Castille pointed out in his dissenting opinion in *Welsh, supra,* "[a] prima facie case for [a] claim of corporate liability involves a showing that a hospital employee had a duty to recognize and report abnormalities in the treatment of a patient, that the hospital employee

should have informed the attending physician of the abnormality and that the hospital employee should have informed the hospital of the abnormality when the attending physician failed to act so that the hospital could have taken corrective action." *Welsh* at 517, 698 A.2d at 587. Dr. Miser did not suggest that the acts of the hospital fell below acceptable medical standards, nor did Dr. Miser criticize any Jameson staff member for failure to report Dr. Ritz's decision to discharge decedent. Rather, Dr. Miser was critical of Dr. Ritz, the attending physician, for imprudently discharging decedent. Dr. Miser adamantly insists that it was Dr. Ritz's duty to ensure that any health issues were resolved prior to discharging decedent. Plaintiff failed to set forth any specific facts suggesting decedent's condition at the time of discharge warranted any type of interference by staff members at Jameson.

Even assuming arguendo that Jameson breached its duty to oversee Dr. Ritz while treating a patient within its facility, plaintiff failed to establish any facts demonstrating this negligence was the proximate cause of decedent's death. Again, Dr. Miser's opinion suggests that, had Dr. Ritz and Dr. Shober been more prudent in treating decedent, his death may have been prevented. However, Dr. Miser does not advocate that the death would have been prevented had the hospital taken on the impractical task of monitoring all treatment provided by independent physicians within the walls of its hospital. Therefore, this court is of the opinion that plaintiff failed to establish a prima facie case against Jameson on the theory of corporate liability.

## c. *Ostensible Agency Liability*

Generally, a hospital is not liable for negligent acts of an independent contractor physician. *Simmons v. St. Clair Memorial Hospital,* 332 Pa. Super. 444, 481 A.2d 870 (1984). However, the Superior Court recognized that vicarious liability might attach to a hospital under the ostensible agency theory. *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 430 A.2d 647 (1980). The ostensible agency theory is set forth in Restatement (Second) of Torts §429, which states:

"One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants."

The court identified two justifying factors for applying the ostensible agency theory in situations where an independent contractor physician causes harm for which the hospital remains liable. *Id.* at 368, 430 A.2d at 649. First, the court recognized that a patient does not enter a hospital with the expectation that an individual doctor will provide medical care, but rather looks to the institution. *Id.* Second, if a hospital "holds out" the physician as an employee, the ostensible agency doctrine will apply. *Id.* at 369, 430 A.2d at 649.

In *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 430 A.2d 647 (1980), plaintiff decedent was

admitted into the hospital after arriving at the emergency room for a severe nosebleed. After admittance, decedent became combative, and the treating physician administered a series of drugs in an attempt to calm him. Subsequently, decedent suffered cardiac arrest and died. The Superior Court found that the hospital was liable under the ostensible agency doctrine. In arriving at this conclusion, the court found that a jury could plausibly conclude that decedent looked to the hospital for treatment and not the treating physician due to the fact that decedent entered the hospital via the emergency room and the treating physician examined him in the capacity of a staff physician and not a personal physician.

In *Simmons v. St. Clair Memorial Hospital,* 332 Pa. Super. 444, 481 A.2d 870 (1984), the Superior Court again determined that a hospital was liable for the negligent acts of a doctor under the ostensible agency doctrine. In this case, decedent committed suicide while a patient in the psychiatric ward of St. Clair Hospital. Dr. Wright, the physician in charge, first encountered decedent when he was admitted to the hospital via the emergency room and Dr. Wright was the "on-call" physician. Additionally, decedent's parents were informed that Dr. Wright was the head of the psychiatric department and that he was "qualified" to provide the treatment decedent required. Based on these facts, the Superior Court determined that the jury could have concluded that the hospital "held out" the doctor as its employee. Consequently, the hospital was liable for the negligent acts of the doctor under the ostensible agency doctrine.

Unlike *Capan* and *Simmons,* this court finds that not enough evidence was presented to allow the ostensible agency doctrine to be applicable to the case at bar. First, at the time of decedent's death, unlike the decedents in *Capan* and *Simmons,* he was not a patient at the hospital. Although decedent was hospitalized at Jameson only a few days before his death, his hospitalization was for treatment of pancreatitis, not a heart condition. Further, decedent was not introduced to the physicians via the hospital. Rather, as previously stated, Dr. Shober and Dr. Ritz were decedent's family physicians. The mere fact that Dr. Shober was a staff member at the hospital and Dr. Ritz was the admitting physician when decedent was treated for pancreatitis does not provide justification to claim that decedent looked to the institution for the medical care he received. The facts clearly demonstrate that decedent received treatment from Dr. Shober at his personal office, not the hospital. Thus, this court concludes that the hospital cannot be held liable for the alleged negligent acts of Dr. Shober under the ostensible agency doctrine.

Additionally, although Dr. Miser was critical of the care Dr. Ritz provided while decedent was hospitalized at Jameson for pancreatitis, no evidence supports a contention that Jameson "held out" Dr. Ritz as an employee.[4] No facts presented to this court indicate that the rela-

---

4. "A holding out occurs 'when the hospital acts or omits to act in some way which leads the patient to a *reasonable* belief he is being treated by the hospital or one of its employees,'" *Pancoast v. Northeastern Hospital,* 24 Phila. 26, 28 (C.P. Philadelphia 1992), quoting *Capan v. Divine Providence Hospital,* 287 Pa. Super 364, 370, 430 A.2d 647, 649 (1980). (emphasis in original)

tionship between decedent and Dr. Ritz was established at the hospital. Rather, it is well established that Dr. Ritz was decedent's family physician, illustrating that decedent and Dr. Ritz had an ongoing relationship prior to his hospitalization.[5] Thus, this court finds that decedent would have looked to the individual physician and not the hospital for medical care.

Consequently, this court finds that plaintiff failed to establish that there exists any material fact which would support the contention that Jameson is liable under the ostensible agency doctrine.

## IV. CONCLUSION

Based on the foregoing analysis, this court holds that plaintiff has failed to establish a case of negligence based upon any theory against these defendants. Accordingly, this court grants defendants' motion for partial summary judgment.

## ORDER

Now, February 28, 2007, this case being before the court for oral argument on January 29, 2007, on the motion for partial summary judgment filed by the defendant, Jameson Memorial Hospital and Jameson Health System, with both parties appearing through their counsel, the plaintiff, Arlene Pennington, individually and as administratrix of the estate of Delbert Joseph Pennington,

---

5. To further support this conclusion, this court again references Dr. Miser's expert report, referring to Dr. Ritz as Dr. Shober's colleague and the admitting *family physician*.

represented through counsel, Susan M. Papa, Esquire and the defendants, Jameson Memorial Hospital and Jameson Health System, represented through their counsel, Gayle L. Godfrey, Esquire and after consideration of the oral argument and briefs presented and submitted by both counsel, and after a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

(1) In accordance with the attached opinion, the motion for partial summary judgment is hereby granted.

(2) Summary judgment is entered in favor of the defendants, Jameson Memorial Hospital and Jameson Health System and against the plaintiff, Arlene Pennington, individually and as administratrix of the estate of Delbert Joseph Pennington on the claims of professional malpractice negligence only and not on any other claims raised by the plaintiff.

(3) The prothonotary is directed to serve a copy of this order of court upon counsel of record, Susan M. Papa, Esquire and Gayle L. Godfrey, Esquire.